IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRETT PETERS** : | |
| **Plaintiff,** : | |
| : | |
| v. : | **CIVIL ACTION NO. 12-2946** |
| : | |
| : | |
| **SETIZ, Correctional Officer,** *et al.* : | |
| **Defendants.** : | |

MEMORANDUM OPINION

Rufe, J.                                                                                                             August 25, 2016

Plaintiff alleges that while he was incarcerated in Lancaster County prison, Defendant Correctional Officer Seitz physically assaulted Plaintiff and then delayed Plaintiff from receiving medical attention for the resulting injuries. Plaintiff asserts claims against Defendant Seitz pursuant to 42 U.S.C. § 1983 for violating his constitutional rights to be free from the use of excessive force and for deliberate indifference to his serious medical needs, and also asserts claims for assault and battery pursuant to Pennsylvania common law. Plaintiff also alleges that Defendant Lancaster County is liable for the constitutional violations because it failed to train Defendant Seitz. Discovery having concluded, Defendants have moved for summary judgment. For the reasons stated below, Defendants' motion will be granted in part and denied in part.

**I.    STANDARD OF REVIEW**

A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit

---
[1] Fed. R. Civ. P. 56(a).

under the governing [substantive] law."[2] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[4] Further, a court may not weigh the evidence or make credibility determinations.[5] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[6] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[7] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[8] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[9]

## II. DISCUSSION

### A. Claims under the Eighth and Fourteenth Amendments

Defendants first argue that because Plaintiff was a pretrial detainee at the time of the incident, his claim is governed by the Fourteenth Amendment, not the Eighth Amendment, and

---

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3] *Id.*

[4] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[5] *Boyle v. Cty. of Allegheny, Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[7] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[8] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

[9] *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

because Plaintiff has not pleaded a Fourteenth Amendment claim, summary judgment is warranted. Defendants are correct that the Eighth Amendment prohibition against cruel and unusual punishment is inapplicable to pretrial detainees, who are instead protected by the due process rights secured by the Fourteenth Amendment.[10] However, "[t]he Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,'" and the Third Circuit evaluates the medical indifference claims of both pretrial detainees and convicted prisoners according to the same standard.[11] As there is no confusion as to the applicable standard, and no prejudice to Defendants, the Court will not elevate form over substance.[12] Summary judgment is denied on this basis.

*B. Excessive Force*

The essence of an excessive force claim in the context of a prison is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[13] Relevant factors for consideration include the need for the use of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates, and any efforts to temper the severity of a forceful response.[14]

Defendants argue that the evidence in the case establishes that Defendant Seitz used

---

[10] *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Bell v. Wolfish*, 441 U.S. 520, 531 (1979).

[11] *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere*, 463 U.S. at 244).

[12] The Court may entertain an amendment of the pleadings even at trial "when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits." Fed. R. Civ. P. 15(b)(1).

[13] *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

[14] *Smith v. Price*, 610 F. App'x 113, 115-16 (3d Cir. 2015) (internal citations and quotations omitted).

reasonable force necessary to restore order. There is no dispute that there was a confrontation between the two men, but much else is contested. Defendants argue that Plaintiff aggressively started an argument with Defendant Seitz, refused orders to return to his cell, and actively resisted when Defendant Seitz escorted Plaintiff to his cell. Plaintiff argues that on the day of the incident, Defendant Seitz received a three-day suspension as the result of a disciplinary investigation into another incident when he failed to perform two cell checks and only belatedly was an inmate discovered dead, face-down in a pool of blood in his cell.[15] Plaintiff has testified that in the wake of that incident, he notified Defendant Seitz's superiors that Defendant Seitz was not doing his job, and Officer Seitz then threatened to "get" Plaintiff.[16] According to Plaintiff, Defendant Seitz provoked the dispute between them that day and then dragged Plaintiff to his cell when Plaintiff attempted to contact a supervisor.

Given these conflicting versions of events, summary judgment would not be warranted unless this were a case in which "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, [and therefore] a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[17] Defendants argue that video from security cameras in the prison establishes that their version is the correct one. The Court has reviewed the DVD, which has no sound and shows grainy footage from several angles of Plaintiff and Defendant Seitz in certain areas of the prison, and concludes that it does not "blatantly contradict [Plaintiff's] account such that no reasonable jury

---

[15] Def. Ex. 6 at DFT 477. It is not clear whether Defendant Seitz had been notified of the suspension before the incident with Plaintiff occurred.

[16] Peters Dep at 36-37.

[17] *Scott v. Harris*, 550 U.S. 372, 380 (2007).

4

could believe it."[18] Although the video certainly shows some degree of physical contact between the two men, including some apparent use of force by Defendant Seitz, it does not clearly establish that Defendant Seitz was simply using reasonable force to escort a recalcitrant and resisting inmate to his cell. It is relevant in this regard that Defendant Seitz, who is more than 30 years younger and nearly 100 pounds heavier than Plaintiff, did not call for assistance at any time during the incident.[19] Under these circumstances, and in light of the conflicting accounts, whether the use of force was necessary to restore order as Defendants argue, or unnecessary and excessive as Plaintiff contends, cannot be determined as a matter of law.[20]

*C. Delayed Medical Attention*

On October 29, 2010, medical personnel examined the Plaintiff around 10:45 in the evening, approximately two hours after the incident described above.[21] The medical personnel who examined Plaintiff noted redness on his back, a red mark below his left deltoid, and a red hand print on the upper right side of his back.[22] Plaintiff complained of lower back pain and exhibited

---

[18] *McDowell v. Sheerer*, 374 F. App'x 288, 292 (3d Cir. 2010) (alteration omitted). The video also does not show what, if anything, occurred in Plaintiff's cell. Plaintiff argues that Defendant Seitz struck and kicked him; Defendant argues that Defendant Seitz was out of view of the cameras for no more than five seconds, which was not enough time to lock Plaintiff's cell and to assault him. The video evidence cannot establish what occurred, and it is for the factfinder to evaluate the entirety of the parties' contentions as to what happened. *Cf. Tindell v. Beard*, 351 F. App'x 591, 596 (3d Cir. 2009) (summary judgment is warranted when "no reasonable finder of fact could view the video of the incident and determine that [the correction officer] acted maliciously and sadistically.").

[19] Defendants argue that the video was reviewed by prison officials and by the Lancaster County District Attorney's Office with no finding of wrongdoing by Defendant Seitz, but the Court has conducted its own review for purposes of determining whether the video images blatantly contradict Plaintiff's version of events.

[20] For the same reasons, Plaintiff's claims of assault and battery may proceed. Under Pennsylvania law, "[a] police officer may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary or excessive," which is analogous to the allegations here. *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). Defendants' citation to a criminal law statute as to when the use of force is justified is inapposite for determining civil liability, and in any event, under that statute, the official of a correctional institution must believe the force used is necessary and the nature or degree of force must not be forbidden by law. 18 Pa. Stat. and Cons. Stat. Ann. § 509(5).

[21] Ex. 2-A (Pl.'s Dep. Exhibit 1 at Pl.'s 0037).

[22] *Id.*

5

decreased ability to bend at the waist.[23] The medical personnel prescribed "Motrin and muscle rub per protocol" and instructed Plaintiff to "contact medical with any further complaints."[24] Plaintiff returned for additional treatment on October 31, 2010 and November 1, 2010.[25] On November 1, 2010, medical personnel assessed the Plaintiff as having "acute" back and shoulder pain that increased with direct palpation.[26] Plaintiff was given a back brace and states that he still suffers from back pain and numbness in his leg.[27]

Plaintiff has not produced evidence of "deliberate indifference" to his "serious medical needs."[28] A serious medical need is "one that has been diagnosed by a physician as requiring immediate medical treatment or is one that is so obvious that even a lay person would clearly and easily recognize the necessity for a doctor's attention."[29] A prison official acts with deliberate indifference when that official has "an actual, subjective appreciation of an excessive risk to inmate health or safety" and "consciously disregards that risk."[30] Deliberate indifference may be evidenced by intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, or denial of reasonable requests for treatment that result in suffering or risk of injury.[31] In this case, the asserted delay before Plaintiff received treatment was relatively brief,

---

[23] *Id.*

[24] *Id.*

[25] Ex. 2 (Pl.'s Dep. Tr. 74:22-76:21); Ex. 2A (Pl.'s Dep. Exhibit 1 at Pl.'s 0039-41).

[26] Ex. 2A (Pl.'s Dep. Exhibit 1 at Pl.'s 0041).

[27] Pl.'s Dep. at 60, 61.

[28] *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).

[29] *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).

[30] *Schieber v. City of Phila.*, 320 F.3d 409, 421 (3d Cir. 2003) (internal quotations omitted).

[31] *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). The Court does not understand Plaintiff to assert a separate claim for injury resulting from the fall from his bunk.

given that it does not appear that the injuries were obvious and there is no evidence that Plaintiff's injuries were exacerbated by any delay. Plaintiff received no initial treatment other than Motrin and muscle rub, which is further evidence that there was no immediately appreciable risk to Plaintiff's health or safety. Defendants' motion will be granted as to this claim.

### D. Qualified Immunity

The defense of qualified immunity is available to governmental officials when they are sued in their individual capacity. Qualified immunity shields officers from suit (not just liability) when their actions do not constitute constitutional violations. It also shields officers from suit for constitutionally deficient actions where the officer "reasonably misapprehends the law governing the circumstances [he] confronted."[32] Thus, to overcome a presumption of qualified immunity, a plaintiff must establish: 1) that an official violated a statutory or constitutional right; and 2) that the right allegedly violated was clearly established at the time *(i.e.* it would be clear to a reasonable officer that his conduct was unlawful under the circumstances).[33] In this case, it is well-settled law that an officer may not use gratuitous force against an inmate.[34] If the events played out as Plaintiff claims they did, qualified immunity offers no shield to Defendant Seitz.

### E. Monell *Claim*

There is no *respondeat superior* liability under § 1983.[35] Thus, to hold Lancaster County liable for the actions of its employee, Plaintiff must: "(1) identify a policy or custom that deprived [him] of a federally protected right, (2) demonstrate that the [County], by its deliberate conduct,

---

[32] *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

[33] *Id.*

[34] *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009).

[35] *Rizzo v. Goode*, 423 U.S. 362, 376-77 (1978).

7

acted as the 'moving force' behind the alleged deprivation, and (3) establish a direct causal link between the policy or custom and the plaintiff's injury."[36]

In limited circumstances, a county also may be held liable for failure to train its employees. The failure to train must demonstrate a deliberate indifference to an obvious need for training in order to prevent constitutional violations,[37] in situations "where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact."[38] Generally, a plaintiff needs to point to a pattern of violations, not a single incident, to establish a township's liability for failure to train its police force. However, in a narrow range of circumstances, "the unconstitutional consequences of failing to train could be so patently obvious that a [county] could be liable under § 1983 without proof of a pre-existing pattern of violations."[39] "Liability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'"[40] Here, Plaintiff argues in general terms that Lancaster County failed to adequately train Defendant Seitz, and that "Lancaster County was aware of the dangers posed by Seitz to inmates, as demonstrated by its reprimands of Seitz for numerous incidents occurring prior to the October 29, 2010 incident, as well as poor performance reviews."[41] Plaintiff, however, has not shown that Defendant Seitz's shortcomings as a correctional officer were the result of a general failure to train

---

[36] *Torres v. City of Allentown*, No. 07-0934, 2008 WL 2600314, at * 4 (E.D. Pa. Oct. 31, 2013) (internal quotation marks omitted) (citing *Bd. of the Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997)).

[37] *Id.* at *5.

[38] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

[39] *Connick v. Thompson*, 563 U.S. 51, 64 (2011).

[40] *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223-24 (3d Cir. 2014) (quoting *Brown*, 520 U.S. at 409).

[41] Plff. Opp. Summ. J. at 14. Plaintiff also argues that there were later incidents and that Defendant Seitz eventually was fired.

officers appropriately, as opposed to a problem with this particular officer. Defendants have produced the prison's use-of-force policy, and Plaintiff has not shown that it is deficient.[42] Without expert testimony or other evidence as to what type of training was lacking, the claim against Lancaster County cannot proceed.[43]

### III. CONCLUSION

For the reasons explained above, summary judgment is denied as to the claims against Defendant Seitz for excessive force and for assault and battery. Summary judgment is granted as to all other claims. An order will be entered.

---

[42] Def. Ex. 5.

[43] *See, e.g.*, *Thomas*, 749 F.3d at 226 (Plaintiff offered expert evidence as to the training needed and witness testimony as to how the incident could have been avoided).